*E-Filed 6/22/10*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JOSE ANGEL JUAREZ,

    Petitioner,

  v.

FRANCISCO JACQUEZ, Warden,

    Respondent.

No. C 09-2734 RS (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

This is a federal habeas corpus action filed by a *pro se* state prisoner pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is DENIED.

## BACKGROUND

In 2006, a Santa Cruz County Superior Court jury found petitioner guilty of conspiracy, four counts of second degree robbery, two counts of carjacking, two counts of kidnapping, and four counts of assault with a firearm. (Ans., Ex. W. at 1.) The trial court sentenced petitioner to a term of life in prison with the possibility of parole, plus a consecutive term of thirty-nine years and eight months. Petitioner appealed. The state appellate court struck the simple kidnapping and one of the carjacking convictions, and

otherwise affirmed the judgment. (*Id*. at 2.) The California Supreme Court denied his petition for review. (Pet. at 3.) This federal habeas petition followed. It appears that petitioner did not pursue state collateral relief. (*Id*. at 4–5.)

Evidence presented at trial shows that in 2003, petitioner and an accomplice, Francisco Alvarado, robbed a fruit and vegetable store, and one of its employees, at gunpoint. During the drive away from the crime scene, petitioner and Alvarado got into a car accident, disabling the van they were driving. At gunpoint, the pair forced a passing motorist, Leslie Durkee, to drive them. During that ride, petitioner and Alvarado robbed Durkee of money and possessions, and drove off in her car, leaving her behind. (Ans., Ex. W at 3–7.) At trial, Alvarado testified against petitioner in exchange for a reduced sentence of ten years and four months. (*Id*. at 7.) Also at trial, a taped police statement made by Damian Gutierrez, a co-conspirator who did not participate in the actual criminal events, was played for the jury.

As grounds for federal habeas relief, petitioner alleges that (1) defense counsel rendered ineffective assistance when he failed to object to the testimony of an accomplice on grounds that such testimony was coerced, and (2) the trial court violated his rights to due process and to an impartial jury when it allowed the jury to hear inadmissible and highly prejudicial evidence which tainted their evaluation of the case.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

**DISCUSSION**

**1.   Assistance of Counsel**

Petitioner claims that defense counsel rendered ineffective assistance when he failed to object to the testimony of Alvarado on grounds that such testimony was coerced. (Pet. at 7.) According to petitioner, the prosecutor coerced Alvarado into testifying by telling him that the crime was "very serious, and carried an increased penalty because of the use of a gun." (*Id*. at 14.) Petitioner also alleges that the prosecutor warned Alvarado that "it would make a difference if he [Alvarado] 'took the rap' by himself," and that the length of Alvarado's sentence would depend on his willingness to name an accomplice. (*Id*.) Alvarado's plea agreement and testimony were therefore coerced, according to petitioner, and defense counsel violated petitioner's Sixth Amendment rights by failing to object to such coerced testimony. The Court notes that Alvarado's plea agreement contained the following statement, "Defendant Francisco Alvarado agrees that the single condition of his plea

1  agreement is that he must testify truthfully and completely." (Ans., Ex. W at 19.)

2  The state appellate court rejected this claim:

3  [Petitioner] has not shown that police and prosecutors were insisting on a particular story from Alvarado in exchange for his plea agreement, that is, he has not shown that they insisted that Alvarado implicate [petitioner] even though [petitioner] was not guilty. Rather, the record demonstrates that Alvarado agreed to testify "truthfully and completely," whether it helped or hurt [petitioner]. As [petitioner] has not shown that any police or prosecutorial coercion affected the reliability of Alvarado's testimony, he has not shown that counsel was ineffective for failing to object to Alvarado's testimony on that ground.

8  (*Id.* at 21.)

9  Before the Court can determine the merits of petitioner's ineffective assistance claim, it must determine first whether petitioner has shown that Alvarado's testimony was coerced. On this point, it is true that "a promise of leniency accompanied by threats or other coercive practices constitutes improper influence and makes a subsequent inculpatory statement involuntary." *Williams v.* Woodford, 384 F.3d 567, 595 (9th Cir. 2004) (citing *United States v. Tingle*, 658 F.2d 1332, 1336 (9th Cir.1981)). In one case, coercion was found when an interrogating officer accused the defendant of lying, recited the maximum penalties of crimes that could be charged, threatened the defendant that she might not see her two-year-old child if she went to prison, and promised the defendant that the agent would inform the prosecutor if she cooperated or refused to cooperate. *See Tingle*, 658 F.2d at 1336. Yet, an interrogating agent's suggestion that a suspect's cooperation with the government will have a positive effect on the suspect's possible sentence is not, on its own, an improper inducement that causes the suspect's later testimony for the government to be involuntary. *See United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir.1988). Even requiring a witness to testify truthfully "in conformity with prior statements" to police does not represent coercion, threats, or intimidation. *Woods v. Adams*, 631 F.Supp.2d 1261, 1279 (C.D. Cal. 2009). Consequently, petitioner's allegations, even when taken as true, that the prosecutor implied Alvarado could effect the length of his sentence by testifying do not show that Alvarado's testimony was involuntary, or was otherwise improperly induced, coerced, or the result of

coaching.[1] Moreover, the jury was able to consider that Alvarado testified in exchange for a benefit. Indeed, Alvarado plainly admitted on the stand that he took the plea agreement "so that I wouldn't get a life sentence." (Ans., Ex. K at 1577.)

Much of Alvarado's testimony that petitioner was involved in the crimes was corroborated by other evidence. Petitioner's palm print was found on the white van used in the getaway. (*Id*., Ex. K at 1548.) Gutierrez, a co-conspirator, testified as to his knowledge of petitioner's involvement in the crimes. (*Id*., Ex. L at 1788–1802.) Also, Victor Espericueta, a person petitioner visited after the robberies, gave a statement that petitioner had dropped off some items at his house, later identified as Leslie Durkee's property. (*Id*., Ex. L at 1882–84; Ex. 9 at 1239.)

Against that backdrop of an absence of a showing of improper coerced testimony, petitioner's ineffective assistance claim must be assessed. Claims of ineffective assistance of counsel are examined under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two factors. First, that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id*. at 687–68. Second, that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

---

[1] Petitioner also alleges that the police unduly influenced Alvarado's identification of petitioner as the culprit by showing him only one photo, and that one was of petitioner. (Pet. at 14.) Petitioner further alleges that Alvarado was mentally disabled, implying, it is assumed, that because of this, Alvarado was easily manipulated by the police and prosecutor, and also incapable of understanding the terms of the plea agreement. (*Id.*) As to the first allegation, petitioner's counsel questioned Alvarado regarding his identification of petitioner. The jury then could consider the circumstances of the identification in order to determine its reliability. A federal habeas court "must presume — even if it does not affirmatively appear on the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson v. Virginia*, 443 U.S. 307, 326 (1979). As to the second allegation, a review of Alvarado's testimony clearly shows that Alvarado understood the proceedings, and responded intelligibly and appropriately to questions on direct and cross-examination. (Ans., Ex. K at 1577–1665.) Alvarado's "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) (citations omitted). Furthermore, " mental state alone does not make a statement involuntary." *United States v. Orso*, 266 F.3d 1030, 1039 (9th Cir. 2001). Rather, "[c]oercive conduct by police must have caused [him] to make the statements." *Id*.

proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Where the defendant is challenging her conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the *Strickland* test if the petitioner cannot establish incompetence under the first prong. *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

Applying these legal principles to the instant matter, the Court concludes that petitioner is not entitled to habeas relief on this claim. Without the requisite threshold showing that Alvarado's testimony was coerced, it follows that defense counsel was not deficient in failing to object to the testimony on that ground. It is both reasonable and not prejudicial for an attorney to forego a meritless objection. *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) (holding that an attorney's failure to file a meritless motion both reasonable and not prejudicial). Accordingly, petitioner's claim must be DENIED.

## 2.  Admission of Possibly Prejudicial Evidence

Petitioner claims that the trial court violated his due process right to a fair trial when it admitted into evidence Gutierrez's taped statement to police. (Pet. at 20.) The recording contained a possibly damaging statement that was inadvertently unredacted. The state appellate court summarized the relevant facts as follows:

> [T]he prosecutor played for the jury a tape recording of Gutierrez's police interview following the search of his home late the night of December 19, 2003. Redacted transcripts of the tape were provided to the jurors at that time, but they were instructed that the tape, not the transcripts, was evidence, that the transcripts would be picked up after the tape was played, and that they were not going to see a transcript again . . . [O]nly the tape was admitted into evidence.
>
> Later that day, outside the presence of the jury, the court stated that the tape played for the jury had statements by Gutierrez regarding [petitioner's] star tattoo that were not in the transcript given to the jury. The statement was that the tattoo denoted that defendant had "offed someone." The court and defense counsel acknowledged that there was a chance that some members of the jury did not hear the statement due to the poor quality of the tape, but the court stated that "the fact of the matter is it was played and we need to make a record

> of what it was that was played." The prosecutor stated that the statement had been edited out of the tape, but she had "picked up the wrong tape after [defense counsel] and I listened to it at lunch."

(Ans., Ex. W at 21–22.) The trial court, the prosecutor, and defense counsel agreed on a method to assess the effect the statement may have had on the jurors:

> [T]he court and the parties questioned each of the 12 jurors and the four alternates individually. The jurors were given a copy of the redacted transcript and asked if they heard words on the tape that were not included in the transcript in the specific location of the star tattoo discussion, and, if so, what were the words. Although several jurors remembered that there were words on the tape that were not in the transcript, and some of them thought there was some reference in the tape to the star tattoo being gang-related, none of them said that they remembered any specific words.

(*Id.* at 24.) After this inquiry, defense counsel moved for a mistrial, a motion the trial court denied. (*Id.*)

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999). The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). In order to obtain habeas relief on the basis of an evidentiary error, a petitioner must show that the error was one of constitutional dimension and that it was not harmless under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). He would have to show that the error had "'a substantial and injurious effect' on the verdict." *Dillard v. Roe*, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (quoting *Brecht*, 507 U.S. at 623).

Petitioner is not entitled to habeas relief on this claim. In short, there is no evidence that the jurors accurately heard or understood the statement that petitioner may have killed someone. Had the jurors heard and understood the statement, or the record indicated such a possibility, those circumstances might dictate a different outcome. Here, however, petitioner is not able to show that the jury's exposure to the statement had any effect on the verdict, let alone whether such an effect was substantial or injurious. Accordingly, the claim must be

DENIED.

## CONCLUSION

The state court's adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

Petitioner's motion to extend time to file a traverse (Docket No. 17) is DENIED as moot because petitioner has filed a traverse (Docket No. 18), which is deemed timely filed. This order terminates Docket No. 17.

The Clerk shall enter judgment in favor of respondent, terminate the pending motion, and close the file.

**IT IS SO ORDERED.**

DATED: June 21, 2010

RICHARD SEEBORG
United States District Judge